J-A28025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH PEASALL | : | |
| | : | |
| Appellant | : | No. 956 EDA 2022 |

Appeal from the PCRA Order Entered March 17, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002647-2012

BEFORE: PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MARCH 21, 2023**

Keith Peasall ("Peasall")[1] appeals from the order dismissing his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[2] Additionally, Peasall's appellate counsel, Earl G. Kauffman, Esquire ("Attorney Kauffman"), has filed a petition to withdraw from representation and an accompanying brief styled pursuant to **Anders v. California**, 386 U.S. 738 (1967).[2] We grant counsel's petition and affirm the PCRA court's order.

---

[1] The record reflects that the appellant's actual name is Tremaine Millian; however, he uses several aliases, including "Keith Peasall," and also goes by the nickname "Mukmin." **See** N.T., 9/23/13, at 19-21.

[2] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] Counsel petitioning to withdraw from PCRA representation must proceed not under **Anders** but under **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en*
*(Footnote Continued Next Page)*

In 2011, Peasall was arrested in connection with the 2007 homicide of Samere Taylor and charged with murder, possession of a firearm prohibited, and related crimes. At the preliminary hearing, the Commonwealth presented the testimony of Devonne Brinson, who testified that he witnessed Peasall shoot Taylor in the back near the corner of Dickenson and Bouvier Streets in South Philadelphia. On the scheduled trial date of September 23, 2013, following written and oral plea colloquies, Peasall entered a negotiated guilty plea to murder of the third degree and possession of a firearm prohibited. The Commonwealth agreed to *nolle prosequi* the remaining charges. In connection with his plea, Peasall admitted to killing Taylor and agreed with the factual summary of the murder as read into the record by the Commonwealth. *See* N.T., 9/23/13, at 37-38, 48-50. On that same date, during his sentencing hearing, Peasall apologized to Taylor's family for murdering Taylor and stated that the shooting resulted from Peasall's poor judgment and decision-making following a meaningless verbal altercation with Taylor. *Id*. at 48-52. The trial court accepted the plea and sentenced Peasall to the negotiated aggregate sentence of eleven to twenty-two years in prison.

---

*banc*). Although **Anders** and **Turner**/**Finley** are close cousins, bearing similarities in that counsel is required to examine the record, present issues, and request permission to withdraw, there are also significant differences, as explained **infra**. **See Commonwealth v. Wrecks**, 931 A.2d 717, 721-22 (Pa. Super. 2007).

Peasall did not file a motion to withdraw his guilty plea, a post-sentence motion, or a direct appeal.

On July 20, 2018, Peasall filed the instant *pro se* PCRA petition, his first. Therein, he averred that the Commonwealth made a deal with Brinson to give him the lowest possible sentences (if not probation) on his open criminal cases in exchange for Brinson providing false testimony against Peasall. **See** *Pro Se* PCRA Petition, 7/20/18, at 7; **see also id**. at 8 (alleging a violation of **Brady v. Maryland**, 373 U.S. 83 (1963)).[3] The court appointed Dennis I. Turner, Esquire ("Attorney Turner"), as PCRA counsel. Attorney Turner filed a "no-merit" letter pursuant to **Turner**/**Finley**, indicating that following his review, he had determined that Peasall's *pro se* petition was untimely, he could not satisfy any timeliness exception, and that his issues lacked merit. On February 4, 2021, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing. Peasall did not respond to the notice. On February 20, 2021, Attorney Turner filed a motion to withdraw.

_____

[3] In **Brady**, the United States Supreme Court ruled that the suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. **See Brady**, 373 U.S. at 87. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, **see United States v. Agurs**, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as directly exculpatory evidence, **see United States v. Bagley**, 473 U.S. 667, 676 (1985).

In August 2021, George S. Yacoubian, Jr., Esquire ("Attorney Yacoubian") entered his appearance.[4]  In September 2021, Attorney Yacoubian filed a "no-merit" letter pursuant to **Turner**/**Finley** wherein he agreed with Attorney Turner's assessment.  In January and February 2022, the PCRA court issued additional Rule 907 notices of its intent to dismiss the petition.  Peasall did not respond to the notices.  On March 17, 2022, the PCRA court entered an order dismissing Peasall's *pro se* petition as untimely and meritless.  **See** Order, 3/17/22, at 1.  The order also indicated that Attorney Yacoubian was permitted to withdraw, and that new counsel would be appointed for Peasall's PCRA appeal.  **Id**.  Attorney Kauffman thereafter filed a timely notice of appeal on Peasall's behalf.  The PCRA court ordered Peasall to file a Pa.R.A.P. 1925(b) concise statement.  In response, Attorney Kauffman indicated that he would be filing an **Anders** brief in this Court.  The PCRA court did not file a Rule 1925(a) opinion.  In this Court, Attorney Kauffman has filed a petition to withdraw, and an accompanying brief styled pursuant to **Anders**.

At the outset of our review, we note that this case does not implicate **Anders**.  As explained above, **Anders** applies to direct appeals whereas **Turner**/**Finley** applies to PCRA cases.  This Court has explained the

---

[4] The docket does not reflect any ruling by the PCRA court on Attorney Turner's motion to withdraw from representation.

differences between the requirements imposed by **Anders** and **Turner**/**Finley**, as follows:

> **Anders** counsel is not permitted to withdraw unless the appeal is wholly frivolous, but **Turner**/**Finley** counsel is permitted to do so if the case lacks merit, even if it is not so anemic as to be deemed wholly frivolous. Also, **Anders** counsel must not argue against the client's interests while **Turner**/**Finley** counsel must do so, articulating why the client's claims have no merit.
>
> The heightened protection afforded to **Anders** appellants as compared to **Turner**/**Finley** petitioners/appellants arises because the right to counsel on direct appeal and the right to the direct appeal itself are constitutional ones. By comparison, a first-time PCRA petitioner's right to counsel is born of rule, namely Pa.R.Crim.P. 904(C), and that right does not spring from the federal or state constitutions.

**Wrecks**, 931 A.2d at 722 (citations omitted).

Because an **Anders** brief provides greater protection to a defendant, this Court may accept an **Anders** brief *in lieu* of a **Turner**/**Finley** "no merit" letter. **See Commonwealth v. Widgins**, 29 A.3d 816, 817 n.2 (Pa. Super. 2011). However, prior to addressing the merits of the issues raised for our review, we must assess whether counsel's filings satisfy the technical requirements of **Turner**/**Finley**. **See Commonwealth v. Muzzy**, 141 A.3d 509, 510 (Pa. Super. 2016) (holding that "prior to addressing the merits of the appeal, we must review counsel's compliance with the procedural requirements for withdrawing as counsel").

Pursuant to **Turner**/**Finley**, independent review of the record by competent counsel is required before withdrawal on collateral appeal is permitted. **See Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009),

*overruled on other grounds by* **Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2021) (abandoning **Pitts's** approach as the sole procedure for challenging PCRA counsel's effectiveness). In **Pitts**, our Supreme Court explained that such independent review requires proof of:

1. A "no-merit" letter by PC[R]A counsel detailing the nature and extent of his review;

2. The "no-merit" letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;

3. The PC[R]A counsel's "explanation," in the "no-merit" letter, of why the petitioner's issues were meritless;

4. The PC[R]A court conducting its own independent review of the record; and

5. The PC[R]A court agreeing with counsel that the petition was meritless.

**Id**. (citation and brackets omitted). Further, counsel must also send a copy of the "no-merit" letter to the petitioner, along with a copy of the petition to withdraw, and inform the petitioner of the right to proceed *pro se* or to retain new counsel. **See Wrecks**, 931 A.2d at 721. Substantial compliance with the requirements to withdraw as counsel will satisfy the **Turner**/**Finley** criteria. **See Commonwealth v. Karanicolas**, 836 A.2d 940, 947 (Pa. Super. 2003). If the brief meets these requirements, we then conduct an independent review of the petitioner's issues. **See Muzzy**, 141 A.3d at 511.

Our review discloses that Attorney Kauffman has substantially complied with the above requirements. In the **Anders** brief, Attorney Kauffman detailed the nature and extent of his review of the case, listed each issue that

Peasall wishes to have reviewed, and explained counsel's reasoning for concluding that each of the issues are meritless. *See Anders*' Brief at 4-18. Attorney Kauffman has provided this Court with a copy of a letter dated August 20, 2022, which he sent to Peasall informing him of counsel's belief that Peasall's *pro se* petition was untimely filed, included no issues of arguable or legal merit, and that the appeal was frivolous. *See* Letter, 8/20/22, at unnumbered 1. Attorney Kauffman also advised Peasall of his rights to retain replacement counsel or proceed *pro se*. *Id*. The letter does not indicate that a copy of the petition to withdraw or a copy of the *Anders* brief was attached to the letter. *Id*. However, the petition to withdraw and the *Anders* brief both contain a certificate of service which indicates that a copy of the document was sent to Peasall on August 20, 2022. *See* Petition to Withdraw, 8/20/22, at unnumbered 3; *see also Anders* Brief, 8/20/22, at unnumbered 19. Thus, we conclude that Attorney Kauffman has substantially complied with the requirements necessary to withdraw as counsel. *See Karanicolas*, 836 A.2d at 947. We now independently review Peasall's claims to ascertain whether they entitle him to relief.

In the *Anders*' brief, Attorney Kauffman listed the issues that Peasall wished to raise, as follows:

> 1. Whether [Peasall's] PCRA petition was timely filed when it was filed approximately [four] years after [the] judgment of sentence [became final] and there was no applicable statutory exception.

- 7 -

2. Whether prosecuting attorneys knowingly, intelligently and willfully hid the fact that they made an agreement with . . . Brinson to testify falsely against [Peasall] in exchange for a lesser sentence.

3. Whether [Peasall] entered the negotiated guilty plea out of extreme fear and under extreme duress because [he] did not have proof that the [District Attorney's] Office made an agreement with . . . Brinson to testify falsely against [Peasall] in exchange for a lesser sentence in the open cases . . . Brinson had.

4. Whether . . . Brinson did lie when asked if he had any agreement with the [District Attorney] in exchange for his testimony against [Peasall].

5. Whether there was a ***Brady*** violation when the Commonwealth did not disclose the agreement.

6. Whether [Peasall] is factually innocent of the crimes he plead guilty to when he did not shoot anyone, was not in possession of any firearm, and was on 18th and Marris at the time of the crime.

***Anders***' Brief at 4 (unnecessary capitalization omitted, issues reordered for ease of disposition).

Our standard of review of an order dismissing a PCRA petition is well-settled:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

- 8 -

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania, the Supreme Court of the United States, and or at the expiration of time for seeking the review." *Id*. § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010).

In the instant matter, Peasall's judgment of sentence became final on October 23, 2013, thirty days after the trial court entered the judgment of sentence, and Peasall declined to file a notice of appeal to this Court. *See* Pa.R.A.P. 903(a); *see also* 42 Pa.C.S.A. § 9545(b)(3). Thus, Peasall had until October 23, 2014 to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1). The instant petition, filed on July 20, 2018, was filed nearly four years after the judgment of sentence became final. Therefore, the instant petition is facially untimely under the PCRA.

Pennsylvania courts may consider an untimely PCRA petition if the petitioner can plead and prove one of three exceptions set forth under 42 Pa.C.S.A. § 9545(b)(1), which provides:

**(b) Time for filing petition**.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1). Any PCRA petition invoking one of these exceptions "shall be filed within one year of the date the claim could have been presented." *Id*. § 9545(b)(2). If the petition is untimely and the petitioner has not pleaded and proven a timeliness exception, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the petition. *See Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa. Super. 2013).

In the *Anders* brief, Attorney Kauffman indicates that Peasall sought to invoke the "new fact" exception to the PCRA's time bar as set forth in section 9545(b)(1)(ii), which provides the PCRA court with jurisdiction to consider an untimely petition where the petitioner alleges and proves that the facts on

which his claim is predicated were unknown to him and that he could not have ascertained those facts by the exercise of due diligence. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii); **see also Commonwealth v. Bennett**, 930 A.2d 1264, 1270-72 (Pa. 2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. **See Commonwealth v. Carr**, 768 A.2d 1164, 1168 (Pa. Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. **See Commonwealth v. Breakiron**, 781 A.2d 94, 98 (Pa. 2001). This rule is strictly enforced. **See Commonwealth v. Monaco**, 996 A.2d 1076, 1080 (Pa. Super 2010).

According to Attorney Kauffman, Peasall claims that his petition is timely because he was not aware of any deals that the Commonwealth made with Brinson until July 12, 2018, approximately eight days before he filed his *pro se* petition. Attorney Kauffman explains that this assertion is incorrect, as Peasall was present in court on the day of his scheduled trial when the court and the parties discussed Brinson's criminal history and the possibility of a benefit on his open criminal case for his cooperation with the Commonwealth. Attorney Kauffman points out that this information was also discussed at the preliminary hearing. On this basis, Attorney Kauffman concludes that Peasall is unable to satisfy the due diligence requirement of the "new fact" exception to the PCRA's time bar.

Our review of the record discloses that Brinson testified at the preliminary hearing that he has known both Peasall and Taylor since his youth, and that in 2007, he witnessed Peasall shoot Taylor in the back at the corner of Dickenson and Bouvier Streets in South Philadelphia as Taylor was running away. *See* N.T., 2/29/12, at 6, 9-10, 14. Brinson indicated that the firearm used by Peasall was a "black snub nose seven" revolver, possibly a .38 or a .357. *Id*. at 46-48. Brinson explained that he did not inform police of the murder committed by Peasall until November 2009, when Brinson was "brought down on my previous matters concerning homicides." *Id*. at 16. At that time, Brinson provided a statement to police regarding the murder of Taylor by Peasall in 2007. *Id*. at 17. Brinson admitted that he was currently serving a sentence of five to ten years in prison for a firearms offense as well as another sentence of five to ten years in prison for a violation. *Id*. at 22. Brinson also admitted that he provided the November 2009 statement to detectives about the murder prior to receiving his second sentence. *Id*. at 22. Brinson stated that although he had an open criminal case at the time he provided his statement, the district attorney made no promises to him on his open criminal case, Brinson was not hoping for a deal on his open case, and his second prison sentence of five to ten years was not the result of any deal with the district attorney. *Id*. The prosecutor indicated that Brinson had received immunity regarding Taylor's murder for his testimony against Peasall. *Id*. at 28. On cross-examination, defense counsel questioned Brinson

regarding whether his second sentence was the result of a deal with the Commonwealth after he provided police with his statement in November 2009. *Id*. at 25-27.

On the scheduled trial date of September 23, 2013, the court conducted a pretrial hearing on a motion *in limine* at which the prosecutor explained that Brinson wrote a letter to the police in November 2009 wherein he indicated that he had witnessed three different homicides and had information to provide on those homicides. **See** N.T., 9/23/13, at 3-4. The prosecutor further explained that, approximately one week later, Brinson provided his statement to police. **Id**. The prosecutor indicated that, although Brinson had indicated at the preliminary hearing that he was not hoping for a benefit on his open criminal case, she was "sure" that he was hoping for such a benefit. **Id**. at 13.

Based on our review, we conclude that Peasall failed to establish the "new facts" exception to the PCRA's time bar. Peasall was present in court at the preliminary hearing on February 29, 2012. **See** N.T., 2/29/12, at 9 (wherein Brinson pointed at Peasall in the courtroom and identified him as the individual who shot Taylor). As such, Peasall was aware on that date that Brinson had an open criminal case when he provided his November 2009 statement to detectives. Peasall would also have known on that date that Brinson lied and provided false testimony that Peasall committed Taylor's murder. Further, given Brinson's outright denial of any deal with the

Commonwealth at the preliminary hearing and the prosecutor's silence on this line of questioning, Peasall should have exercised due diligence in investigating whether Brinson provided false testimony at the preliminary hearing as part of an undisclosed deal with the Commonwealth. However, rather than exercising such due diligence, Peasall did nothing.

Peasall was also present in court eighteen months later on his scheduled trial date of September 23, 2013, when the prosecutor explained that Brinson sent a letter to police in November 2009 indicating that he had information regarding three homicides, and that the prosecutor believed that Brinson sent the letter hoping for "a benefit" on his open criminal case. *See* N.T., 9/23/13, at 13. The prosecutor also disclosed that Brinson sent a subsequent letter to the Commonwealth indicating that he was "he wasn't going to cooperate anymore because he had not gotten what he wanted." *Id*. at 13-14. Defense counsel confirmed that a copy of Brinson's letter to the Commonwealth was provided to Peasall one week prior to trial. *Id*. at 13. Thus, the record is clear that Peasall was aware on September 23, 2013, that Brinson was cooperating with the Commonwealth, that he had expected some kind of benefit from the Commonwealth, and that he was refusing to cooperate in Peasall's case because he did not receive the anticipated benefit. Accordingly, Peasall failed to identify any "new fact" which was unknown to him and could not have been discovered through the exercise of due diligence. Thus, based on our independent review, we conclude that the record supports the PCRA

court's determination that Peasall's petition should be dismissed as untimely is supported by the record.[5]

We further conclude that, even if Peasall had satisfied the "new fact" exception to the PCRA's time bar, his issues are meritless. The statements made by a criminal defendant during a plea colloquy bind the defendant. *See* *Commonwealth v. Muhammad*, 794 A.2d 378, 384 (Pa. Super. 2002). Thus, a defendant cannot assert grounds for withdrawing the plea that contradict statements made at that time of the plea. *See Commonwealth v. Stork*, 737 A.2d 789, 790-91 (Pa. Super. 1999) (holding that a defendant is bound by the statements he makes during his plea colloquy and may not assert grounds for withdrawing the plea that contradict statements made when he pled).

Here, as explained above, Peasall completed both written and oral plea colloquies in which he admitted to murdering Taylor. *See* Written Plea Colloquy, 9/23/13, at 1; *see also* N.T., 9/23/13, at 25-36. Indeed, prior to conducting the oral colloquy, the trial court specifically advised Brinson that "you are bound by the answers that you give me here in open court . . . [a]nd what that means is that you're forever stuck with the answers that you give

---

[5] Although we do not have the benefit of an opinion from the PCRA explaining its determination that Peasall's *pro se* petition should be dismissed as untimely and meritless, *see* Order, 3/17/22, at 1, this Court may affirm the PCRA court's ruling on any valid basis appearing of record. *See Commonwealth v. Radecki*, 180 A.3d 441, 451 (Pa. Super. 2018).

me." N.T., 9/23/13, at 27. Peasall agreed with the Commonwealth's summary of the facts upon which the plea was based, including that in 2007, Peasall fatally shot and killed Taylor by a single gunshot to his back. *Id*. at 37-38. Based on these colloquies, the trial court found Peasall's negotiated guilty plea to murder of the third degree and possession of a firearm prohibited to be knowing, intelligent, and voluntary. *Id*. at 38.

The matter then immediately proceeded to a sentencing hearing at which Peasall exercised his right of allocution. *See* N.T., 9/23/13, at 48. Peasall initially stated, "I stand here and I take full responsibility for my actions . . . in the death of [Taylor]." *Id*. Peasall continued:

> I would like to also say to [Taylor's] family, [his] mother, which I have always had a close relationship with – a friend for many years. We grew up together – that I know my words are not sufficient to replace her son. I hope that she can find in her heart the ability to forgive me for my actions because from day one of this incident . . . from day one – I'm sorry – of this incident, it has been eating at me like cancer.

*Id*. at 48-49. Peasall went on the explain that the murder occurred because he reacted to a very petty and small verbal confrontation with Taylor and used extremely poor judgment and decision-making in handling the situation. *Id*. at 49-50.

Here, Peasall is bound by his admission that he shot and killed Taylor. *See Muhammad*, 794 A.2d at 384; *see also Stork*, 737 A.2d at 790-91. Thus, his claims that he is innocent, that Brinson provided false testimony as part of an undisclosed deal with the Commonwealth, and that the

Commonwealth committed a **Brady** violation by failing to disclose exculpatory evidence (*i.e.*, an undisclosed deal with Brinson to provide false testimony), are meritless. Accordingly, based on our independent review, we conclude that the record supports the PCRA court's determination that the issues Peasall sought to raise are meritless.

We therefore grant counsel's petition to withdraw and affirm the PCRA court order dismissing Peasall's *pro se* petition.

Petition granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2023